Dear Mr. Sloan:
As attorney for the Bay Haven Charter Academy, Inc., you have asked for my opinion on substantially the following questions:
1. Would the creation of a three-member team designated by the board of directors of a private charter school to make all employment, promotion, and disciplinary decisions within the school satisfy the antinepotism requirements of section 1002.33, Florida Statutes?
2. If the three-member team described in Question One was created, would that team be subject to the Government in the Sunshine Law and the Public Records Law?
In sum:
1. In light of the absence of language such as that contained in section 112.3135(2)(a), Florida Statutes, prohibiting action by a collegial body in the appointment or employment of relatives, it does not appear that the creation of such a team to make employment decisions for the Bay Haven Charter Academy would violate section 1002.33(24), Florida Statutes. However, if such a team is created to make employment decisions for the Bay Haven Charter Academy, the members of the team are subject to the provisions of the statute and no member of the team may appoint or employ a relative or advocate on that relative's behalf in any employment decision.
2. If a collegial body is created to oversee personnel decisions of a charter school, the meetings of that board would be subject to Florida's Government in the Sunshine Law. In the absence of an exemption, records of personnel actions are generally subject to public inspection and copying under section 119.07(1), Florida Statutes, whether those records are created and maintained by the Principal of the Bay Haven Charter Academy or by a team of school officers, employees, and others performing those functions.
Question One
According to information supplied with your request, Bay Haven Charter Academy, Inc., (hereinafter "Bay Haven" or "the academy") is a charter school located in Bay County, Florida. The academy was created as a not-for-profit corporation which operates a kindergarten through eighth grade school pursuant to section 1002.33, Florida Statutes, with the oversight of its sponsor, the Bay County School Board. You advise that currently the Principal of Bay Haven is charged by policy of the board of directors with direct oversight of all employees, including the teachers, administration, and maintenance personnel. The Principal makes virtually all employment decisions that involve hiring, firing, and disciplining all individuals employed by the school. One of the current employees of the academy is the Principal's wife, whose contract has been renewed annually each year for the past several years.
Florida's antinepotism laws have been adopted to prohibit those public officials who have the power to appoint or promote or recommend their own relatives from exercising that power.[1] Section 1002.33, Florida Statutes, making provision for charter schools in Florida, was amended in 2009[2] to include the following restriction on the employment of relatives:
"(24) RESTRICTION ON EMPLOYMENT OF RELATIVES. —
(a) This subsection applies to charter school personnel in a charter school operated by a private entity. As used in this subsection, the term:
1. `Charter school personnel' means a charter school owner, president, chairperson of the governing board of directors, superintendent, governing board member, principal, assistant principal, or any other person employed by the charter school who has equivalent decisionmaking authority and in whom is vested the authority, or to whom the authority has been delegated, to appoint, employ, promote, or advance individuals or to recommend individuals for appointment, employment, promotion, or advancement in connection with employment in a charter school, including the authority as a member of a governing body of a charter school to vote on the appointment, employment, promotion, or advancement of individuals.
2. `Relative' means father, mother, son, daughter, brother, sister, uncle, aunt, first cousin, nephew, niece, husband, wife, father-in-law, mother-in-law, son-in-law, daughter-in-law, brother-in-law, sister-in-law, stepfather, stepmother, stepson, stepdaughter, stepbrother, stepsister, half brother, or half sister.
(b) Charter school personnel may not appoint, employ, promote, or advance, or advocate for appointment, employment, promotion, or advancement, in or to a position in the charter school in which the personnel are serving or over which the personnel exercises jurisdiction or control any individual who is a relative. An individual may not be appointed, employed, promoted, or advanced in or to a position in a charter school if such appointment, employment, promotion, or advancement has been advocated by charter school personnel who serve in or exercise jurisdiction or control over the charter school and who is a relative of the individual or if such appointment, employment, promotion, or advancement is made by the governing board of which a relative of the individual is a member.
(c) The approval of budgets does not constitute `jurisdiction or control' for the purposes of this subsection.
Charter school personnel in schools operated by a municipality or other public entity are subject to s. 112.3135."
According to your letter, "the Principal of Bay Haven is tasked with the direct oversight of all of the school's employees, including but not limited to teachers, administration and maintenance personnel, and makes virtually all employment decisions that involve hiring, firing, and disciplining all individuals employed by the school." Under these circumstances, the statute clearly prohibits the principal of Bay Haven Charter Academy, in whom the authority is vested to appoint, employ, promote, or advance employees of the school, from taking any of these employment actions regarding an individual who is a relative of the principal.
Florida's Code of Ethics for Public Officers and Employees, Part III, Chapter 112, Florida Statutes, includes antinepotism provisions and is applicable to personnel in public entity charter schools. Under the provisions of earlier codifications of section 112.3135(2), Florida Statutes, this office and the Florida Commission on Ethics advised that a violation of the antinepotism law could not be avoided under these circumstances by the abstention of the related board member from voting on the employment of that member's relative or advocating for the appointment or employment.[3] However, this interpretation was rejected in 1993 by the Florida Supreme Court in City of MiamiBeach v. Galbut.[4] The Court in the Galbut
case determined that the language of section 112.3135(2)(a), Florida Statutes (1991), prohibited only affirmative acts on the part of the related public official. The Court opined that Mr. Galbut was eligible for reappointment to the city zoning board of adjustment so long as his father-in-law, who sat on the city commission which was responsible for appointing members of the zoning board, abstained from voting and in no way advocated his reappointment.
Following the Court's decision in Galbut, [5] the Legislature amended section 112.3135(2)(a), Florida Statutes, during the 1994 legislative session to include a prohibition against collegial action in nepotism cases:
"A public official may not appoint, employ, promote, or advance, or advocate for appointment, employment, promotion, or advancement, in or to a position in the agency in which he is serving or over which he exercises jurisdiction or control any individual who is a relative of the public official. An individual may not be appointed, employed, promoted, or advanced in or to a position in an agency if such appointment, employment, promotion, or advancement has been advocated by a public official, serving or exercising jurisdiction or control over the agency, who is a relative of the individualor if such appointment, employment, promotion, or advancement ismade by a collegial body of which a relative of the individual is amember. However, this subsection shall not apply to appointments to boards other than those with land-planning or zoning responsibilities in those municipalities with less than 35,000 population."[6] (e.s.)
Thus, section 112.3135(2)(a), Florida Statutes, which now contains the language emphasized above, provides an antinepotism prohibition that applies even if the related official abstains from voting, as the statute prohibits a collegial body from appointing or employing a relative of one of its members to a position in the agency in which the official is serving. As this office noted in an early Attorney General Opinion:
"If any different conclusion was to be reached, the purpose and intent of the Antinepotism Law could be easily circumvented merely by allowing a commission member to abstain. If each member of a commission were allowed to abstain, the board could conceivable employ a relative of each of its members."[7]
You have suggested that it may be possible to avoid the antinepotism prohibition of section 1002.33, Florida Statutes, by adoption of a policy by the board creating a three member team consisting of the principal, the chief financial officer, and a third party from Bay Haven Charter Academy to review all employment, promotion, and disciplinary decisions within the school. In light of the absence of language such as that contained in section 112.3135(2)(a), Florida Statutes, prohibiting action by a collegial body in the appointment or employment of relatives, it would appear that the creation of such a team to make employment decisions would not violate section 1002.33(24), Florida Statutes. However, if such a team is created, members thereof continue to be subject to the provisions of section 1002.33(24), Florida Statutes. Thus, if a relative of a member of the team was the subject of an employment decision, the member would be precluded from advancing, advocating, or voting on his or her relative for a charter school position.
However, this office has serious concerns with regard to the possible disparate treatment in the employment of charter school personnel in public entity charter schools and in private entity charter schools with regard to the differing standards for antinepotism prohibitions contained in section 1002.33, Florida Statutes. It may be advisable for the Legislature to revisit this statute to make its intent clear with regard to whether public and private charter school personnel decisions are both subject to the prohibitions against collegial body action in the appointment or employment of relatives over whom they exercise jurisdiction or control as clearly expressed in section 112.3135(2)(a), Florida Statutes.
In sum, in light of the absence of language such as that contained in section 112.3135(2)(a), Florida Statutes, prohibiting action by a collegial body in the appointment or employment of relatives, I cannot advise you that the creation of such a team to make employment decisions for the Bay Haven Charter Academy would violate section 1002.33, Florida Statutes. However, if such a team is created, members thereof continue to be subject to the provisions of section 1002.33(24), Florida Statutes.
Question Two
A review of the charter and bylaws of the Bay Haven Charter Academy, Inc., indicate that it is the board of directors of the corporation which controls all property, business and affairs of the corporation.[8] You have advised this office that currently the principal, by policy of the board, has been delegated the responsibility for performing all personnel duties for the academy. You ask whether a collegial body, created and charged with performing all employment, promotion, and disciplinary decisions within the school, would be subject to Florida's Public Records and Government in the Sunshine Laws.
The proposed policy creating this collegial body would designate a professional review team consisting of three individuals: the principal, the chief financial officer, and a third team member who would be designated by the board. The team would be responsible for hiring, retaining, disciplining, and terminating from employment all employees of the school based upon input from the principal or an administrative assistant who is not a relative of any person being considered. A member of the team would be required to recuse himself or herself from any discussion of or vote on proposed personnel action on that team member's relative.
Government in the Sunshine Law
Section 1002.33(1), Florida Statutes, provides that "[c]harter schools shall be part of the state's program of public education" and that "[a]ll charter schools in Florida are public schools." The statute also specifically requires compliance with section 286.011, Florida Statutes, relating to public meetings and Chapter 119, Florida Statutes, relating to public records.[9]
It is generally understood to be the case that any gathering, whether formal or casual, of two or more members of the same board or commission to discuss some matter upon which foreseeable action will be taken by that public board or commission is a meeting subject to the Government in the Sunshine Law, section 286.011, Florida Statutes.[10]
While a single officer, in accomplishing his or her official duties and responsibilities may not be subject to the Government in the Sunshine Law while discharging those duties, the creation of a board or commission to accomplish these duties or the delegation of responsibility to a collegial body may implicate the Sunshine Law.[11] For example, in Wood v. Marston, [12] a committee created to screen applications and make recommendations for the position of a law school dean was held to be subject to section 286.011, Florida Statutes. By screening applicants and deciding which applicants to reject from further consideration, the committee performed a policy-based, decision-making function delegated to it by the president of the university. Similarly, this office has concluded in a number of Florida Attorney General Opinions, that a selection committee appointed to screen applications and rank selected applicants for submission to the city council was determined to be subject to the Sunshine Law even though the city council was not bound by the committee's rankings.[13]
The courts have determined that "[t]he Sunshine Law does not provide for any `government by delegation' exception; a public body cannot escape the application of the Sunshine Law by undertaking to delegate the conduct of public business through an alter ego." Thus, the personnel process and meetings of a collegial body, created by the Bay Haven Charter Academy board of directors to perform these duties would be subject to section 286.011, Florida Statutes.[14]
Public Records
Charter schools are specifically made subject to the Public Records Law by section 1002.33(16)(b), Florida Statutes. Public records created by the Principal of the Bay Haven Academy relating to personnel decisions would be subject to the inspection and copying requirements of section 119.07(1), Florida Statutes, in the absence of an
exemption therefor.[15] The creation of a team of charter school officers, employees, and others to review all employment, promotion, and disciplinary decisions within the school would not alter the application of the Public Records Law to documents created and maintained by the school relating to these personnel decisions.
Thus, it is my opinion that if a three-member team is created to perform personnel duties and responsibilities on behalf of the Principal of the Bay Haven Academy, those records and meetings of that team would be subject to the Public Records Law and the Government in the Sunshine Law.
Sincerely,
 Bill McCollum Attorney General
BM/tgh
[1] See, for example, ss. 112.3135, and 1002.33(24)(b), Fla. Stat.; and Ops. Att'y Gen. Fla. 84-18 (1984), 80-70 (1980), 77-144 (1977), and 71-158 (1971).
[2] See s. 7, Ch. 2009-214, Laws of Fla.
[3] See Fla. Comm. on Ethics Op. 92-50 (1992), and opinions cited therein; Ops. Att'y Gen. Fla. 77-130 (1977) and 73-335 (1973).
[4] 626 So. 2d 192 (Fla. 1993).
[5] See Kinzer v. State Ethics Commission,654 So. 2d 1007 (Fla. 3d DCA 1995) in which the court recognized that the statute was changed in response to the Galbut decision in situations involving collegial bodies.
[6] Section 112.3135(2)(a), Fla. Stat. (1994 Supp.).
[7] See Op. Att'y Gen. Fla. 73-335 (1973).
[8] See Article IV, s. 4.1, Bylaws of Bay Haven Charter Academy, Incorporated, dated 4/7/2009).
[9] Section 1002.33(16)(b), Fla. Stat.
[10] Hough v. Stembridge, 278 So. 2d 288 (Fla. 3d DCA 1973).And see City of Miami Beach v. Berns,245 So. 2d 38 (Fla. 1971), Board of Public Instruction of BrowardCounty v. Doran, 224 So. 2d 693 (Fla. 1969), and Wolfson v.State, 344 So. 2d 611 (Fla. 2d DCA 1977).
[11] In City of Sunrise v. News and Sun-Sentinel Company,542 So. 2d 1354 (Fla. 4th DCA 1989), the court held that since the mayor was responsible under the city charter for disciplining city employees and since the mayor was not a board or commission and was not acting for a board, meetings between the mayor and a city employee concerning the employee's duties were not subject to section 286.011, Florida Statutes; but see Ops. Att'y Gen. Fla. 74-294 (1974) and 84-54 (1984).
[12] 442 So. 2d 934 (Fla. 1983).
[13] See, e.g., Ops. Att'y Gen. Fla. 80-20 (1980) and 80-51 (1980).
[14] IDS Properties, Inc. v. Town of Palm Beach,279 So. 2d 353, 359 (Fla. 4th DCA 1973), certified questionanswered sub nom., Town of Palm Beach v. Gradison,296 So. 2d 473 (Fla. 1974). See also News-Press PublishingCompany, Inc. v. Carlson,410 So. 2d 546, 547-548 (Fla. 2d DCA 1982) (when public officials delegate de facto authority to act on their behalf in the formulation, preparation, and promulgation of plans on which foreseeable action will be taken by those public officials, those delegated that authority stand in the shoes of such public officials insofar as the Sunshine Law is concerned). Cf. Leach-Wells v. Cityof Bradenton, 734 So. 2d 1168, 1171 (Fla. 2d DCA 1999) (committee charged with evaluating proposals violated the Sunshine law when the city clerk unilaterally tallied the results of the committee members' individual written evaluations and ranked them; the court held that the "short-listing was formal action that was required to be taken at a public meeting.").
[15] Michel v.Douglas, 464 So. 2d 545 (Fla. 1985).